# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DONALD A. MILLER and JOHN W. MCGUIRE, <br> Plaintiffs, <br> v. <br> CHICAGO TRANSIT AUTHORITY and DONALD BONDS, in his individual capacity, <br> Defendants. | Case No. 17-cv-00806 <br><br> Judge Sharon Johnson Coleman |

## MEMORANDUM AND ORDER

Plaintiffs, Donald A. Miller ("Miller") and John W. McGuire ("McGuire") bring this action against Defendants, Chicago Transit Authority ("CTA") and Donald Bonds ("Bonds") alleging racial discrimination and retaliation for complaining about the racial discrimination pursuant to 42 U.S.C. § 1983, 42 U.S.C. §1981, and 775 ILCS 5/1-101 et seq.. Plaintiff McGuire independently brings claims of racial discrimination and retaliation against CTA pursuant to Title VII of 42 U.S.C. 2000e et seq.. Now Defendants CTA and Bonds separately move to dismiss Plaintiffs' Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the foregoing reasons, Defendants' Motions are granted in part and denied in part.

**Background**

The following facts are taken as true for the purpose of deciding this motion. McGuire, who is Caucasian, worked for CTA for 30 years before he was terminated on July 6, 2016. McGuire was rated a satisfactory employee and received regular raises and promotions. The last promotion occurred in June of 2014 when he was designated the Mechanical Officer. Miller, also Caucasian, worked for CTA for nearly 31 years until he was fired on July 6, 2016. Similar to McGuire, Miller was rated a satisfactory employee, receiving regular promotions and raises. His last position was General Manager. Miller reported directly to McGuire. Both McGuire and Miller began reporting

1

to Bonds, an African-American, when he assumed the role of Vice President of Vehicle Maintenance in January of 2015.

From the time of Bonds' hiring, McGuire and Miller contend that Bonds subjected them to racially discriminatory treatment. McGuire stated that, in March of 2016, Bonds told him that he intended to create a new position—Manager of Bus Maintenance, and hire Teresa Williams to fill it. McGuire suggested that Bonds also consider Todd Dudek for the position, which McGuire contends angered Bonds. McGuire believed that Bonds falsely concluded that McGuire indicated a preference for a Caucasian manager, Dudek, over the African-American candidate, Williams. McGuire has not indicated how he knew Bonds was angry or how the anger manifested itself.

On June 20, 2016, Bonds spoke with McGuire about whether McGuire intended to retire prior to July 1, 2016 so that he would be eligible for reduced-cost health insurance under CTA's plan. McGuire responded that he planned to continue working for CTA. According to McGuire, Bonds responded that he might demote or fire McGuire, but did not cite any misconduct, violation, or performance deficiencies warranting such action at the time. McGuire contends that Bonds had a similar retirement discussion with a CTA General Manager, who was African-American, around the same time. Bonds requested that the General Manager rescind his intent to retire and continue working for CTA.

After that conversation with Bonds, on June 21, 2016, McGuire contacted CTA's Equal Employment Officer ("EEO"), Rita Kopida ("Kopida"), to report his belief that Bonds was discriminating against him based on his race. The Kopida initiated an investigation into the allegations and scheduled a follow-up meeting for July 7, 2017 in order for McGuire to provide her with his supporting documentation.

Miller also alleges that Bonds racially discriminated against him because Bonds showed favoritism towards African-American employees over him. As an example, Miller claims that Bonds

was angry with Miller about his decision to place an African-American manager who reported to him on a "Performance Improvement Plan." Miller did not indicate how he knew Bonds was angry or how the anger was demonstrated. On July 5, 2016, Miller contacted Kopida to express his concerns about the racial discrimination. Kopida initiated the investigation process and scheduled a follow-up meeting on the same day as McGuire's meeting, July 7, 2016.

On July 6, 2016, McGuire and Miller were invited to morning meetings with Bonds. When McGuire arrived at his meeting, he found Bonds, the Chief Transit Officer, and a Human Resources representative, all of whom were African-American. Bonds informed McGuire that he was being terminated, effective immediately, but provided no explanation other than that the department was moving in a different direction. When McGuire asked for a reason for his termination, Bonds told him that he was an "at-will" employee and a reason was not required. McGuire requested that Bonds wait to decide on his employment until after the EEO investigation was complete. The Human Resources representative responded that the decision was ultimately up to Bonds and the Chief Transit Officer. Both men decided that CTA would move forward with the termination.

Miller was also terminated at his meeting and given no reason since he was also an "at-will" employee. Miller was replaced by an African-American manager who he contends had significantly less experience and qualifications than he did. Plaintiffs believe that Bonds knew about their EEO complaints and that they were scheduled to meet with the EEO the next morning when he terminated their employment.

Plaintiffs now seek damages, alleging that CTA had a custom or practice of discriminating against people based on race, and that Bonds personally perpetuated this unlawful discrimination and retaliation against them. Defendants both rebut these claims, contending that the Second Amended Complaint fails to adequately plead sufficient causes of action.

**Legal Standard**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint, not the merits of the allegations. *Gardunio v. Town of Cicero,* 674 F. Supp. 2d 976, 983 (N.D. Ill. 2009) (Dow, J.). "The issue involved is not whether the claimant is entitled to prevail, but whether the claimant is entitled to offer evidence in support of the claims." *Id.* (citation omitted). When ruling on a motion to dismiss, a court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in a plaintiff's favor. *Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 830 (7th Cir. 2012). The allegations must contain sufficient factual material to raise a plausible right to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 n. 14, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L. Ed. 2d 868 (2009).

**Discussion**

*Counts III and V*

Defendant CTA asserts that Plaintiffs' recitals of fact for Counts III and V are not sufficient to state a plausible claim for racial discrimination. Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against individuals with respect to compensation, terms, conditions, or privileges of employment on account of that individual's race. 42 U.S.C. § 2000e-2(a)(1). As IHRA claims apply the same standard, the two claims will be discussed together. *Zaderaka v. Ill. Human Rights Com.*, 131 Ill. 2d 172, 178, 137 Ill. Dec. 31, 34, 545 N.E.2d 684, 687 (1989). A Title VII suit "must proceed against the employer as an entity rather than against a natural person." *Carver v. Sheriff of LaSalle Cty.*, 243 F.3d 379, 381 (7th Cir. 2001).

To succeed on a Title VII or IHRA claim, McGuire and Miller must demonstrate the offender's discriminatory intent through direct proof or indirect evidence. *Paxson v. Cty. of Cook*, No. 02 C 2028, 2002 U.S. Dist. LEXIS 15647, at *6 (N.D. Ill. Aug. 21, 2002)(Darrah, J.)(citing *Contreras v. Suncast Corp.*, 237 F.3d 756, 759 (7th Cir.), cert. denied, 534 U.S. 824, 151 L. Ed. 2d 29, 122 S. Ct. 62 (2001)). If a plaintiff cannot provide direct support of discriminatory intent, an indirect demonstration can be made by showing: (1) he is a member of a protected class; (2) he was performing his job in a satisfactory manner; (3) he was subjected to an adverse employment action; and (4) similarly situated employees were treated more favorably. *Hoffman-Dombrowski v. Arlington Int'l Racecourse, Inc.,* 254 F.3d 644, 650 (7th Cir. 2001). The burden then shifts to the defendant to put forth a "legitimate, nondiscriminatory business reason for the challenged action." *Id.* If the defendant meets this burden, then Plaintiffs must demonstrate that the articulated reason was pretextual. *Id.*

In the case of reverse discrimination, a plaintiff must demonstrate background circumstances that suggest they are members of a protected class in this situation. These circumstances can include any "allegations that the particular employer at issue has some inclination or reason to discriminate against the majority or allegations that indicate that there is something 'fishy' about the facts of the case." *Paxson* 2002 U.S. Dist. LEXIS 15647 at *7 (citing *Mills v. Health Care Services Corp.*, 171 F.3d 450, 455-457 (7th Cir. 1999)). Courts have also found that if a plaintiff cannot show background circumstances, a logical reason to believe that the employer's "decision rests on a legally forbidden ground" will suffice to shift the burden to the defendants. *Id.* at *8.

This Court is not convinced that Plaintiffs have demonstrated the background circumstances that implicate reverse discrimination. Compared to *Paxton*, where the court found that the plaintiff demonstrated "something fishy about the facts," Plaintiffs' allegations here are insufficient. Paxton

5

alleged that he was treated differently than similarly situated non-white employees, and provided clear examples of racial harassment to that effect, such as accusations of Klu Klux Klan affiliation, and racist vandalism to his office, that his employer refused to investigate or punish. Here McGuire and Miller merely assert that Bonds, an African-American, became upset with them, Caucasian employees, for their decisions. They have not alleged any organization-sanctioned discriminatory conduct, "fishy facts," or even a logical basis for believing that CTA acted discriminately beyond the fact that the offending actors were African-American. This does not rise to the level of baseline circumstances required to reach the plausible inference that CTA was inclined to discriminate unlawfully against white people or treat white employees differently because of their race. Thus, Count V, McGuire's claim of race discrimination under Title VII is dismissed without prejudice.

In evaluating employment discrimination actions brought under the Illinois Human Rights Act, courts have adopted the analytical framework used to analyze Title VII cases, so the aforementioned rationale applies to Count III as well. McGuire and Miller have not established sufficient background circumstances to support an inference of reverse discrimination, and so, Count III is dismissed without prejudice as well.

*Counts IV and VI*

Title VII's anti-retaliation provision makes it unlawful for an employer to discriminate against an employee because he has opposed any unlawful employment practice or because he has made a charge, testified, assisted, or participated in a Title VII investigation, proceeding, or hearing. 42 U.S.C. § 2000e-3(a). Since courts apply the same framework to analyze retaliation claims under IHRA, this Court will evaluate the sufficiency of Counts IV and VI together. *Hoffelt v. Ill. Dep't of Human Rights*, 367 Ill. App. 3d 628, 632, 310 Ill. Dec. 701, 705, 867 N.E.2d 14, 18 (2006).

In order to prove retaliation, McGuire and Miller must allege: "1) a statutorily protected activity, 2) an adverse action taken by the employer, and 3) a causal connection between the two." *Salas v. Wis. Dep't of Corr.*, 493 F.3d 913, 924 (7th Cir. 2007) (citing *Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 728 (7th Cir. 2003)). Courts have "accepted circumstantial evidence of intentional retaliation, including evidence of suspicious timing, ambiguous statements, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn" to surmise a plausible causal link. *Id.* (citing *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994); *Salas v. Wis. Dep't of Corr.*, 493 F.3d 913, 924 (7th Cir. 2007)).

Applying the above test to the facts, this Court finds that Plaintiffs have alleged a plausible claim. First, in order to allege protected conduct, a plaintiff need not prove that the employer's action was actually discriminatory or that a plaintiff would have prevailed under an intentional discrimination Title VII claim. *Leitgen v. Franciscan Skemp Healthcare, Inc.*, 630 F.3d 668, 674 (7th Cir. 2011). It is enough to have a reasonable, good-faith belief that the act was discriminatory. *Id.* Here, Plaintiffs genuinely believed that they were terminated because they filed an official complaint about the racial discrimination they believe they suffered at the hand of their supervisor. Whether it is a winnable claim or not, alleging that they lodged a complaint or participating in an investigation into that complaint is protected activity under Title VI that satisfies this part of the test. Second, "There is no dispute that [a] Plaintiff's termination constitutes an adverse employment action," so being terminated establishes the second prong. *Nair v. Bank of Am. Ill.*, 991 F. Supp. 940, 960 (N.D. Ill. 1997) (Pallmeyer, J.). Finally, Plaintiffs' allegations have established a sufficient causal link between the protected conduct and the adverse action to withstand scrutiny at this early stage of litigation. While there is no definitive statement that Bonds knew about the complaints when McGuire and Miller were terminated, "a plaintiff may establish a link through evidence that the discharge took

7

place on the heels of the protected activity." *Alexander v. Gerhardt Enters.*, 40 F.3d 187, 196 (7th Cir. 1994); *see Casna v. City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009)(finding that the suspicious timing of the adverse action immediately following the protected conduct created a triable issue). This Court can properly conceive of a causal link between the protected conduct—the EEO complaint—and Plaintiffs' terminations based on the timing of the EEO investigations and their subsequent dismissals. Accordingly, Defendant CTA's motion to dismiss is denied with respect to Counts IV and VI.

*Counts I and II*

CTA

Defendant CTA contends that Counts I and II should be dismissed for failure to state a claim under *Monell*. Given Plaintiffs' statement that they will not be pursuing Counts I and II, (Dkt. 38, p. 2), these claims are waived and dismissed as to CTA.[1]

Bonds

Counts I and II of the Second Amended Complaint allege that Bonds racially discriminated and retaliated against Plaintiffs in violation of §§ 1981 and 1983. Bonds believes these claims should be dismissed because qualified immunity shields him from suit and further, because Plaintiffs failed to plead a cause of action against him in his individual capacity.

Section 1981 establishes the right to be free from discrimination based on race as it relates to the making and enforcement of contracts and to be free from work-place retaliation. 42 U.S.C. § 1981. Section 1983 is the exclusive vehicle through which a plaintiff can assert deprivations of rights guaranteed by § 1981 when the claim is against state actors. *Nitch v. Ester*, No. 16-CV-06033, 2017 U.S. Dist. LEXIS 171338, at *11 (N.D. Ill. Oct. 17, 2017)(Tharpe, J.)(citing *Jett v. Dallas Indep. Sch.*

---

[1] While the statement to not pursue Counts I and II was broad and vague, since Plaintiffs did not reiterate this intention in their Response to Bonds' Motion to Dismiss and also presented argument, this Court interprets that the concession was exclusive to CTA.

8

*Dist.*, 491 U.S. 701, 735, 109 S. Ct. 2702, 105 L. Ed. 2d 598 (1989)); *see also* 42 U.S.C. § 1983. When evaluating discrimination claims under section 1983 or section 1981, courts apply the same proof analysis as a disparate treatment claim under Title VII, *see supra* pp. 4-8. *Brown v. City of Chi.*, Case Number: 00 C 4173, 2002 U.S. Dist. LEXIS 16920, at *27 (N.D. Ill. Sep. 6, 2002)(Guzman, J.).

"'The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Gerhartz v. Richert*, 779 F.3d 682, 688 (7th Cir. 2015) (citing *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)). While qualified immunity has not been a traditional grounds for dismissal under Rule 12(b)(6), more recently "courts have been admonished to resolve qualified immunity issues at the earliest possible stage of litigation." *McGreal v. AT&T Corp.*, 892 F. Supp. 2d 996, 1011 (N.D. Ill. 2012)(Castillo, J.). "When a qualified immunity defense is presented in a motion to dismiss, courts 'apply the standard of review under Rule 12(b)(6), accept[ing] as true the well-pleaded allegations of the complaint and the inferences that may be reasonably drawn from those allegations'" to assess whether an established right has been violated. *Id.* (citing *Stevens v. Umsted*, 131 F.3d 697, 706 (7th Cir. 1997).

To overcome a presumption of qualified immunity, a plaintiff's pleading must establish two things: (1) that the facts alleged describe a violation of a protected right; and (2) that this right was clearly established at the time of the defendant's alleged misconduct. *Gerhartz*, 779 F.3d at 688 (citing *Mordi v. Zeigler*, 770 F.3d 1161, 1164 (7th Cir. 2014)).

In evaluating if Plaintiffs properly alleged a claim for racial discrimination, the Court must first examine whether the pleading properly alleged a violation of a protected right that was clear at the time of the discrimination. The Second Amended Complaint states that Bonds "acted intentionally, and with reckless indifference to both Plaintiffs' rights under 42 U.S.C. § 1981," by discriminating and retaliating against them. Plaintiffs supported these assertions by alleging that

9

Bonds treated them discriminately for making decisions within their discretion because they are Caucasian and for wrongfully terminating them based on their EEO complaints.

Here, the rights to not be racially discriminated and retaliated against established by § 1981 were clear at the time that the incidents occurred, satisfying the second prong of the test. The question of whether they were protected rights remains. In light of the Title VII discussion above, *see supra* pp. 4-8, this Court is not convinced that Plaintiffs have sufficiently alleged evidence of racial discrimination that would permit Count I to survive a motion to dismiss, even considering the barebones pleading standard. Thus, the inquiry for that claim stops here. The Court does find, however, that the facts alleged could plausibly support that Bonds violated Plaintiffs rights to be free from retaliation under § 1981. Consequently, it will consider Bonds' second argument—whether Plaintiff's failure to state that Bonds acted "under the color of the law" is fatal to Count II.

Alleging that a party acted in his official capacity requires more than simply including boilerplate language in the pleading. Action taken under the color of the law occurs when "the wrongdoer is clothed with the authority of state law," and "the act committed . . . [is] in some way related to the performance of the duties of the state office." *Gibson*, 910 F.2d at 1516; *Thomas v. Cannon*, 751 F. Supp. 765, 767-68 (N.D. Ill. 1990) (Norgle, J.). While Plaintiffs did not include the specific phrase "under the color of the law" in Count II, they did allege that Bonds was the Vice President of Vehicle Maintenance for CTA, a position of authority vested by the state that permitted him to make consequential decisions about Plaintiffs' employment. Further, the fact that Plaintiffs did not specifically identify a discriminatory policy or custom that lead to the retaliation is also not fatal to their claim against Bond in his individual capacity. *Brown v. Budz*, 398 F.3d 904, 917 (7th Cir. 2005). Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain only "a short and plain statement of the claim showing the pleader is entitled to relief." This requires only the bare minimum of facts to provide notice. *Id.* Given the liberal pleading requirement to survive a motion

under Rule 12(b)(6), it is not unreasonable for this Court to draw the inference that Bonds' conduct could be retaliatory and to permit Plaintiffs access to discovery that will further bolster these claims. *Brown*, 398 F.3d at 917.

For these reasons, Defendant Bonds' Motion to Dismiss is denied as to Count I and granted as to Count II.

**Conclusion**

Based on the foregoing, this Court grants Defendants' motions to dismiss Counts I, III and V of Plaintiffs Amended Complaint, and denies the Motions as to the remaining Counts.

IT IS SO ORDERED.

ENTERED:  SHARON JOHNSON COLEMAN
United States District Court Judge

Dated: 2/15/2018