# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DONALD A. MILLER and JOHN W. MCGUIRE, | ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 17-cv-00806 ) |
| CHICAGO TRANSIT AUTHORITY and DONALD BONDS, in his individual capacity, | ) Judge Sharon Johnson Coleman ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM AND ORDER

Plaintiffs, Donald A. Miller and John W. McGuire bring this action against Defendants, Chicago Transit Authority ("CTA") and Donald Bonds alleging racial discrimination and retaliation pursuant to 42 U.S.C. § 1983, 42 U.S.C. §1981, and 775 ILCS 5/1-101 et seq.. Plaintiff McGuire independently brings claims of racial discrimination and retaliation against CTA pursuant to Title VII of 42 U.S.C. 2000e *et seq.*. Now Defendants collectively move for partial dismissal of Plaintiffs' Third Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the foregoing reasons, Defendants' Motion is denied.

**Background**

The following facts are taken as true for the purpose of deciding this motion. CTA is the operator of mass transit in Chicago, IL and some of its surrounding suburbs. Its employees are required to live in Cook County unless waived from the residency requirement. In 2016, Cook County's population was comprised of the following racial demographics: 65.6% Caucasian, 25.3% Hispanic, and 24.2% African-American. In 2017 the composition of CTA's full-time workforce was 17.8% Caucasian, 13.8 % Hispanic, and 64.6% African-American. In Fiscal Year 2017, 10.7% of the new hires were Caucasian, 11.8 were Hispanic, and 71.2% were African-American.

McGuire, who is Caucasian, worked for CTA for 30 years when he was terminated on July 7, 2016. McGuire was rated a satisfactory employee and received regular raises and promotions. The last promotion occurred in June of 2014 when he was designated the Mechanical Officer. Miller, also Caucasian, worked for CTA for nearly 31 years until he was fired on July 7, 2016. Similar to McGuire, Miller was rated a satisfactory employee, receiving regular promotions and raises. His last position was General Manager. Miller reported directly to McGuire. Both McGuire and Miller began reporting to Bonds, an African-American, who assumed the role of Vice President of Vehicle Maintenance in January of 2015.

From the time of Bonds' hiring, McGuire and Miller contend that Bonds subjected them to racially discriminatory treatment. McGuire stated that, in March of 2016, Bonds told him that he intended to create a new position, Manager of Bus Maintenance, and hire Teresa Williams to fill it. McGuire suggested that Bonds also consider Todd Dudek for the position, which McGuire contends angered Bonds. McGuire believed that Bonds falsely concluded that McGuire indicated a preference for a Caucasian manager, Dudek, over the African-American candidate, Williams.

On June 20, 2016, Bonds asked McGuire whether he intended to retire because July 1, 2016 was the cutoff to enroll in CTA's reduced-cost health insurance plan for retirees. McGuire indicated that he planned to continue working for CTA. McGuire contends that Bonds responded by threatening to demote or fire him. Bonds did not raise any issues of misconduct, or performance deficiencies warranting any adverse employment action during the meeting. According to McGuire, Bonds also discussed retirement with an African-American General Manager at CTA around the same time. When that General Manager expressed his desire to retire, Bonds asked him to continue working at CTA.

After that conversation with Bonds, McGuire contacted Rita Kopida, CTA's Equal Employment Officer ("EEO"), to complain that Bonds was discriminating against him based on his

race. Kopida initiated an investigation into the allegations and scheduled a follow-up meeting for July 7, 2017 so that McGuire could provide her with his supporting documentation.

Miller also alleges that Bonds racially discriminated against him and showed favoritism towards African-American employees that reported to Miller. As an example, Miller claims that Bonds was angry with Miller about his decision to place an African-American manager who reported to him on a "Performance Improvement Plan." After implementing the performance plan, Bonds began to scrutinize Miller's work more closely, and became critical of his performance. On July 5, 2016, Miller contacted Kopida to express his concerns about the racial discrimination. Kopida initiated the investigation process and scheduled a follow-up meeting on the same day as McGuire's meeting, July 7, 2016.

On July 6, 2016, McGuire and Miller were invited to morning meetings with Bonds. When McGuire arrived at his meeting, he found Bonds, the Chief Transit Officer, and a Human Resources representative, all of whom were African-American. Bonds informed McGuire that he was being terminated, effective immediately, but provided no explanation other than that the department was moving in a different direction. When McGuire asked for a reason for his termination, Bonds told him that he was an "at-will" employee and a reason was not required. McGuire requested that Bonds wait to decide on his employment until after the EEO investigation was complete. The Human Resources representative responded that the decision was ultimately up to Bonds and the Chief Transit Officer. Both men decided that CTA would move forward with the termination.

Miller was also terminated at his meeting and given no reason since he was also an "at-will" employee. Plaintiffs believe that Bonds knew about their EEO complaints and that they were scheduled to meet with the EEO the next morning when he terminated their employment. Both McGuire and Miller were replaced by African-Americans who they contend had significantly less experience and qualifications than either of them.

3

Plaintiffs now seek damages for the discriminatory and retaliatory discrimination they experienced at the hands of CTA and Bonds. In a previous motion, Defendant successfully moved to dismiss Counts I, III and V of Plaintiffs Second Amended Complaint. Plaintiffs have since filed a Third Amended Complaint on March 27, 2018 renewing those claims.

**Legal Standard**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual allegations to state a facially plausible claim for relief that goes beyond mere speculation. *Ashcroft v. Iqbal*, 556 U.S. 62, 678 (2009). When reviewing a motion to dismiss, the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Pisciota v. Old Nat. Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007).

**Discussion**

*Illinois Human Rights Act and Title VII Claims against CTA.*

Defendants again move to dismiss the claims that CTA violated the Illinois Human Rights Act and Title VII because Plaintiffs failed to meet their burden of pleading reverse discrimination. Plaintiffs argue that the additional facts alleged in the Third Amended Complaint concerning the disparities between the racial demographics of Cook County and CTA's labor force, as well as the fact that Plaintiffs were both replaced by African-American employees, provide sufficient background circumstances to establish a reverse discrimination claim.

As IHRA and Title VII claims apply the same standard, the two claims will be discussed together. *Zaderaka v. Ill. Human Rights Com.*, 131 Ill. 2d 172, 178, 137 Ill. Dec. 31, 34, 545 N.E.2d 684, 687 (1989). To succeed on a Title VII or IHRA claim, McGuire and Miller must demonstrate the offender's discriminatory intent through direct proof or indirect evidence. *Paxson v. Cty. of Cook*,

No. 02 C 2028, 2002 U.S. Dist. LEXIS 15647, at *6 (N.D. Ill. Aug. 21, 2002)(Darrah, J.)(citing *Contreras v. Suncast Corp.*, 237 F.3d 756, 759 (7th Cir.), cert. denied, 534 U.S. 824, 151 L. Ed. 2d 29, 122 S. Ct. 62 (2001)).  If a plaintiff cannot provide direct evidence of discriminatory intent, an indirect demonstration can be made by showing: (1) he is a member of a protected class; (2) he was performing his job in a satisfactory manner; (3) he was subjected to an adverse employment action; and (4) similarly situated employees were treated more favorably. *Hoffman-Dombrowski v. Arlington Int'l Racecourse, Inc.,* 254 F.3d 644, 650 (7th Cir. 2001).  Plaintiffs that are members of a historically favored group must show background circumstances that indicate the employer has reason to discriminate against their group or show facts of "fishy" circumstances in order to satisfy the first element of the test.  *Paxson*, 2002 U.S. Dist. LEXIS 15647 at *7 (citing *Mills v. Health Care Services Corp.*, 171 F.3d 450, 455-457 (7th Cir. 1999)).

In this Third Amended Complaint, Plaintiffs have attempted to bolster their claims against CTA by incorporating statistical information about the entity's labor force.  While the Court does not refute the usefulness of statistics and how it can add context to these claims, it still finds that Plaintiff's proffer here is insufficient to constitute "fishy" background circumstances.  Plaintiffs provided the racial composition of Cook County in 2016, of CTA's full-time employees in 2017, as well as of CTA's new hires in 2017.  The information that is lacking here, which is critical to fully assessing the picture, is the racial composition of the CTA applicant pool.  As the Complaint stands, this Court would have to make a leap in logic to conclude, as Plaintiffs desire, that CTA has a practice of discriminatory hiring.  District Courts are not required to invent arguments for parties. *Cty. of McHenry v. Ins. Co. of the West.*, 438 F.3d 813, 818 (7th Cir. 2006); *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 947 (7th Cir. 2013).

Although this Court is not convinced that the statistics alone have established the requisite background circumstances, the Court does find Plaintiffs' allegation that they were fired by an African-American supervisor and subsequently replaced by lesser-qualified African-Americans to be enough to survive 12(b)(6) scrutiny as several courts have determined this scenario can establish the first element of the prima facie discrimination case. *Hague v. Thompson Distribution Co.*, 436 F.3d 816, 822 (7th Cir. 2006)(finding evidence that Caucasian plaintiffs were fired by African-American bosses and replaced by other African-American employees satisfied the first element in a reverse discrimination case because it is analogous to typical discrimination cases); *Jacobeit v. Rich Twp. High Sch. Dist. 227*, 673 F. Supp. 2d 653, 660 (N.D. Ill. 2009)(Holderman, J.). While Defendants argue that subsequent cases examining this issue contained more nefarious allegations of discrimination than just a supervisor and subsequent hire being of a different race then the plaintiff, that does not mean the baseline established in *Hague* has been elevated or that more information is required to substantiate a claim at this early stage of the proceedings. Defendants' motion to dismiss Counts III and V is denied.

*Section 1981 and Section 1983 Race Discrimination Claims against Bonds*

Defendants move to dismiss Counts I of Plaintiff's Third Amended Complaint because Plaintiffs' fail to state an actionable claim against Bonds in his individual capacity and because Bonds is shielded from suit by qualified immunity.

Section 1981 establishes the right to be free from racial discrimination with respect to employment contracts and the right to be free from work-place retaliation. 42 U.S.C. § 1981. Section 1983 is the exclusive vehicle through which a plaintiff can assert deprivations of rights guaranteed by § 1981 when the claim is against state actors. *Nitch v. Ester*, No. 16-CV-06033, 2017 U.S. Dist. LEXIS 171338, at *11 (N.D. Ill. Oct. 17, 2017)(Tharpe, J.)(citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735, 109 S. Ct. 2702, 105 L. Ed. 2d 598 (1989)). Individual liability under § 1981

6

is only appropriate when the defendant has participated personally in the alleged discrimination against the plaintiff. *Togba v. Cty. of Cook*, 48 F. Supp. 2d 1104, 1112 (N.D. Ill. 1999)(Alesia, J.).

A successful section 1981 claim is predicated on the same elements as a race discrimination claim under Title VII. *Williams v. Hewitt Assocs., LLC*, No. 02 C 3562, 2005 U.S. Dist. LEXIS 7223, at *5 (N.D. Ill. Mar. 31, 2005)(Gottshall, J.)(citing *Lalvani v. Cook County, Ill.*, 269 F.3d 785, 788 (7th Cir. 2001)). Accordingly, given the above analysis, *see supra* pp. 4-6, Plaintiffs have adequately alleged a claim under §1981. Since the Complaint alleges that Bonds treated Plaintiffs' discriminately and was critical in the decision to terminate their employment with CTA, the Court finds that his involvement in the alleged violations warrants the application of individual liability here.

Now the Court turns to the question of qualified immunity. "'The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Gerhartz v. Richert*, 779 F.3d 682, 688 (7th Cir. 2015) (citing *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)). To overcome a presumption of qualified immunity, a plaintiff's pleading must establish two things: (1) that the facts alleged describe a violation of a protected right; and (2) that this right was clearly established at the time of the defendant's alleged misconduct. *Gerhartz*, 779 F.3d at 688 (citing *Mordi v. Zeigler*, 770 F.3d 1161, 1164 (7th Cir. 2014)).

Here, the Complaint alleges a prima facie case of racial discrimination. Further, the right to be free from racial discrimination pursuant to § 1981 was clearly established at the time of the alleged discrimination. As Plaintiffs have overcome the presumption, qualified immunity does not apply to Bonds. Defendant Bonds' Motion to Dismiss Count I is denied.

7

**Conclusion**

Based on the foregoing, this Court denies Defendants' motions to dismiss Plaintiffs' Third Amended Complaint.

IT IS SO ORDERED.

ENTERED:  SHARON JOHNSON COLEMAN
United States District Court Judge

Dated: 8/20/2018